1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

AGUSTIN A. ARELLANO AND
ANDRES LARA, individuals on
behalf of themselves and all others
similarly situated,

Plaintiffs,

v.

KELLERMEYER BUILDING
SERVICES, LLC,

Defendant.

Case No.  13-cv-00533-BAS(BGS)

**ORDER GRANTING
PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

(ECF No.  54)

On March 7, 2013, Plaintiff Agustin Arellano commenced this putative wage and hour class action against Defendant Kellermeyer Building Service, LLC ("Defendant") alleging violations of California state labor laws and unlawful business practices.  On June 12, 2013, Plaintiff Agustin Arellano filed a First Amended Complaint against Defendant.  On July 24, 2013, Plaintiffs Agustin Arellano and Andres Lara filed a Second Amended Complaint against Defendant, which is the operative complaint.  (ECF No. 9 ("SAC").)  On January 28, 2014, Venancia Portillo moved to intervene in this case as a plaintiff.  Venancia Portillo's motion to intervene was granted on September 15, 2014.

– 1 –

1
2
3
4
5
6
7
8
9
10

Now pending before the Court is a motion for preliminary approval of class action settlement filed by Agustin Arellano, Andres Lara, and Venancia Portillo (collectively "Plaintiffs").   (ECF No. 54.)   After "years of contentious litigation, extensive discovery, and arm's length negotiations," Plaintiffs and Defendant (collectively the "Parties") have reached a settlement which, upon final Court approval, Plaintiffs contend will resolve the claims of Plaintiffs and all putative class members.   Plaintiffs seek an order granting preliminary approval of the proposed class action settlement upon the terms and conditions set forth in the Joint Stipulation of Class Action Settlement and Release Agreement ("Settlement") submitted with Plaintiffs' motion.  (ECF No. 54-2 at Ex. 1.)  Defendant has not filed an opposition.

11
12
13

The Court finds this motion suitable for determination on the papers submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).  For the following reasons, the Court **GRANTS** Plaintiffs' motion.

14

## I.   PROPOSED SETTLEMENT

15
16
17
18
19
20
21
22
23

The Settlement, dated November 1, 2014, is intended to fully resolve all disputes in the following actions: *Portillo v. Kellermeyer Building Services, LLC*, Alameda County Superior Court, Case No. RG11 558695, filed on August 10, 2010, as amended on September 19, 2011 ("*Portillo*"); *Kellermeyer Building Services, LLC v. Portillo*, Los Angeles County Superior Court, Case No. BC488397, filed on July 18, 2012 ("*KBS v. Portillo*"); and *Arellano v. Kellermeyer Building Services, LLC*, United States District Court for the Southern District of California, Case No. 13-cv-0533-BAS-BGS, filed on March 7, 2013, as amended on July 24, 2013 ("*Arellano*"). (Settlement at p. 3 and § 4(10).)

24
25
26
27
28

The Settlement applies to class members defined as "[a]ll persons employed by Kellermeyer Bergensons Services, LLC (formerly known as Kellermeyer Building Services, LLC) as janitors/housekeepers in the State of California at any time from August 10, 2006 to October 27, 2014" ("Settlement Class" or "Class Members").   (*Id.* at §§ I, II(5).)   The Settlement Class includes members of the

*Portillo* class, as well as the two individuals who opted out of the *Portillo* class.  (*Id.* at § I, IV(3).)  According to Defendant's records, there are approximately 13,413 members in the Settlement Class.  (*Id.* at § II(5).)

For purposes of the Settlement, the Parties agree that, subject to the Court's approval, counsel for Portillo and Arellano will be appointed Class Counsel, Plaintiffs will be class representatives, and CPT Group will be appointed as the Settlement Administrator.  (*Id.* at §§ I, II(4, 7-8).)

Under the Settlement, Defendant will pay up to a maximum amount of $2,700,000 ("Gross Settlement Value").  (*Id.* at §§ I, II(13), IV(4).)  Out of this amount, Defendant will pay at least $1,000,000.  (*Id.* at §§ I, II(14-15).)  Members of the Settlement Class will only be paid if they submit a valid and timely claim form ("Participating Class Members").  (*Id.* at §§ I, IV(9))  The Settlement Class will not include those who timely request to opt out.  (*Id.* at §§ IV(3), IV(16).)  Opt-outs will not be held to release any claims for individual relief in any of the above-listed actions, nor may they participate in the Settlement.  (*Id.*)

Subject to Court approval, Defendant has agreed to pay the following enhancement awards to the named Plaintiffs: $10,000 to Ms. Portillo, $2,500 to Mr. Arellano, and $5,000 to Mr. Lara.  (*Id.* at §§ I, II(12), IV(5).)  CPT Group, as the Settlement Administrator, has agreed to administer the Settlement for a flat fee (including costs) of $55,000.  (*Id.* at §§ I, IV(6).)  Further subject to Court approval, Defendant has agreed to pay Class Counsel's attorneys' fees in the amount of $675,000, which represents 25% of the Gross Settlement Value, and costs in the amount of $152,000.  (*Id.* at §§ I, IV(7).)  All of these amounts are to be paid out of the Gross Settlement Value.  (*Id.*)

The Settlement estimates that approximately $1,800,500 will be available for payments to the Settlement Class after deducting Class Counsel's fees and costs, enhancement fees to the named plaintiffs, and the settlement administrator's fee and expenses.  (*Id.* at §§ I, II(17).)  However, this amount may be further lowered by

payment of Defendant's portion of federal, state, and local payroll taxes attributable to settlement payments to Participating Class Members. (*Id.* at § II(17).) The resulting number is referred to as the "Net Settlement Value." (*Id.*)

The Net Settlement Value is proposed to be allocated to Class Members in two components: (1) a settlement payment for deductions related to non-slip work shoes, and (2) settlement payments for other claims. (*Id.* at § IV(8).) For the first component, each Class Member shall be allocated an amount equaling the higher of $25 or 30% of his or her total Shoes For Crew Payroll Deductions. (*Id.*) For the second component, the balance of the Net Settlement Value, after subtracting amounts allocated in the first component, will be allocated to all Class Members based on their work year(s) during the class period. (*Id.*) If claims submitted by Participating Class Members are less than the Minimum Class Payout (approximately $100,500), the difference between the Minimum Class Payout amount and the submitted claims will be distributed to the Participating Class Members proportionally based on their respective claim amounts. (*Id.*) The payment made to each Participating Class Member shall be allocated one-third to wages, one-third to penalties, and one-third to interest. (*Id.*)

Defendant has information regarding each Class Member in its files and will provide any information that the Settlement Administrator reasonably needs to administer the Settlement. (*Id.* at §IV(15).) The Settlement Administrator will update and correct any addresses provided and mail a notice of class settlement and customized claim form, as approved by the Court, in English and in Spanish, by first class mail to each of the Class Members ("Settlement Packet"). (*Id.*) The Settlement Packet will include a business return envelope or a prepaid envelope. (*Id.*) Class Members have 45 days from the original mailing to file a timely claim. (*Id.*) In addition to having the right to opt-out of the Settlement, Class Members also have 45 days from the date of original mailing to file written objections. (*Id.* at § 16.) If more than 10% of Class Members opt out of the Settlement, at Defendant's

discretion, the Settlement can be rendered null and void upon written notice. (*Id*.) If Class Members do not opt-out and do not file a claim, they will receive no money and are bound by the terms of the Settlement. (*Id*. at Ex. A at B(6).)

The Effective Date of the Settlement is the later of 30 calendar days after the judgment of the Court becomes final and no longer subject to appeal, or 30 calendar days after entry of judgment if there are no objections. (*Id*. at § IV(11).) Defendant must fund the settlement amounts required by the Settlement within 35 calendar days after the Effective Date. (*Id*. at § IV(18).) The parties in *Portillo* and *KBS v. Portillo* will stipulate to a stay of those actions during the settlement approval process and dismiss those actions with prejudice upon the occurrence of the Effective Date. (*Id*. at §§ I, IV(12).) Upon final approval by the Court of the Settlement, the class representatives and Class Members and their successors in interest fully release and discharge Defendant from any and all claims arising during the class period and asserted in the Second Amended Complaint in *Portillo* and the Second Amended Complaint in *Arellano*. (*Id*. at § IV(10).)

## II.   ANALYSIS

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, Federal Rule of Civil Procedure 23(e) first "require[s] the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998)). Where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In these situations, settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks

omitted and citation omitted).

### A.    Class Certification

Before granting preliminary approval of a class-action settlement, the Court must first determine whether the proposed class can be certified.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees).

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  In order to justify departing from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).  In this regard, Rule 23 contains two sets of class-certification requirements set forth in Rule 23(a) and (b).  *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).  "A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Rule 23(a) have been met, and that at least one of the requirements of Rule 23(b) have been met." *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 443 (N.D. Cal. 2008).

"Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) questions of law or fact exist that are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Otsuka*, 251 F.R.D. at 443 (citing Fed. R. Civ. P. 23(a)).  "A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including: (1) that there is a risk of substantial prejudice

from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication." *Id.* (citing Fed. R. Civ. P. 23(b)).  Plaintiffs seek class certification under Rule 23(b)(3).

### 1.    Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer."  *Celano v. Marriott Int'l, Inc*., 242 F.R.D. 544, 549 (N.D. Cal. 2007).

According to Defendant's records, there are approximately 13,413 members in the Settlement Class.  (Settlement at § II(5); ECF No. 54-2 ("Jusuf Decl.") at ¶ 40.)  Thus, joinder of all members is impracticable for the purpose of Rule 23(a)(1) and Rule 23(a)(1) is satisfied.

### 2.    Commonality – Rule 23(a)(2)

Under Rule 23(a)(2), the named plaintiff must demonstrate that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  However, "[a]ll questions of fact and law need not be common to satisfy this rule."  *Hanlon*, 150 F.3d at 1019.  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id.*

Plaintiffs allege several claims in the SAC.  Plaintiff's motion for preliminary approval of the Settlement specifically addresses the following claims: (1) time rounding claim; (2) non-slip work shoes expense reimbursement claim; (3) meal break claim; (4) rest break claim; (5) waiting time penalties claim; and (6) derivative

– 7 –

claims (*e.g.*, violation of Cal. Bus. and Prof. Code §§ 17200, *et seq.*)  (*See* Mot. at pp. 12-16.)  As discussed below, each claim involves common questions of law and fact.  Thus, Rule 23(a)(2) is satisfied.

### a.   *Time Rounding Claim*

Plaintiffs' time rounding claim relates to Defendant's practice of rounding off up to seven minutes of each employee's recorded hours worked for each time punch. (Mot. at p. 12; *see also* SAC at ¶¶ 21-29.)   The Parties dispute the legality of this practice.  (Mot. at p. 12.)   Whether Defendant's time rounding practice is legal and whether it has resulted in the failure to pay wages for all hours worked are legal and factual questions common to all putative class members.

### b.   *Non-Slip Work Shoes Expense Reimbursement Claim*

Plaintiffs' work shoes claim relates to Defendant's practice of requiring its janitorial/housekeeping employees to buy a new pair of slip-resistant work shoes every year.  (Mot. at p. 12; *see also* SAC at ¶¶ 80-85.)   Under Defendant's practice, employees may buy shoes from an approved vendor, Shoes For Crew, through payroll deductions, or from another store provided that the shoes meet the company's requirements.  (Mot. at pp. 12-13.)   Plaintiffs argue that California Labor Code section 2802 requires Defendant to reimburse its employees for buying non-slip shoes, and Defendant disagrees.  (*Id.* at p. 13.)   Whether Defendant is required to reimburse its employees for buying non-slip shoes is a legal question common to all putative class members.

### c.   *Meal Break Claim*

Plaintiffs' meal break claim relates to Defendant's alleged failure to provide duty-free meal breaks for those employees who work "locked-in" shifts, in which they are physically locked in the store during their shift and cannot leave, and failure to provide meal breaks within the first five hours of work.  (*Id.* at pp. 13-14; *see also* SAC at ¶¶ 18-19, 40-51.)   Plaintiffs claim the practices violate California Labor Code section 226.7.  (Mot. at pp. 13-14)   Whether Defendant's meal break policies

and practices violate California Labor Code section 226.7 is a common legal question suitable for class treatment.

### d. *Rest Break Claim*

Plaintiffs' rest break claim relates to the legal sufficiency of Defendant's policy on rest breaks.  (*Id.* at p. 14; *see also* SAC at ¶¶ 18-19, 40-51.)  Plaintiffs claim Defendant's policy is facially deficient because it provides for a 10 minute break every 4 hours, whereas California law requires 10 minute breaks for shifts from 3.5 to 6 hours in length, and 30 minutes for shifts of more than 10 hours up to 14 hours.  (Mot. at p. 14.)  Whether Defendant's policy is facially deficient requires resolution of a common legal question.

### e. *Waiting Time Penalties Claim*

Plaintiffs' waiting time claim relates to whether Defendant owes waiting time penalties under California Labor Code section 203 for Defendant's alleged willful failure to pay wages owed, including missed meal and rest break premiums, pursuant to California Labor Code sections 201 and 202.  (*Id.* at p. 15; *see also* SAC at ¶¶ 57-61.)  Whether Defendant's conduct in failing to pay all earned wages was willful will require resolution of certain common legal and factual questions.  (Mot. at p. 15.)

### f. *Derivative Claims*

Plaintiffs have also alleged derivative claims for restitution of wrongfully withheld wages under California Business and Professions Code §§ 17200, *et seq.*, based on the foregoing violations.  (*Id.*; SAC at ¶¶ 62-71.)  These claims raise the same common legal and factual questions discussed above.

### 3. Typicality – Rule 23(a)(3)

To satisfy Rule 23(a)(3), the named plaintiff's claims must be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement is "permissive" and requires only that the named plaintiff's claims "are reasonably coextensive with those of absent class members."  *Hanlon*, 150 F.3d at 1020.  "The test of typicality 'is whether other members have the same or similar injury, whether

the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  "[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id*. (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

Plaintiffs were employed by Defendant during the class period as janitors/house cleaners. (ECF No. 54-3 ("Portillo Decl.") at ¶ 2; SAC at ¶¶ 6-7.) Plaintiffs' claims are based on Defendant's policies and practices.  Thus, the alleged conduct at issue is not unique to the named Plaintiffs, and other Class Members, who were similarly employed by Defendant as janitors/house cleaners during the class period, will have been injured by the same course of conduct and have suffered a similar injury.  Accordingly, Plaintiffs' claims are typical of the claims of the Class Members, satisfying Rule 23(a)(3).

### 4.   Adequacy – Rule 23(a)(4)

Rule 23(a)(4) requires that the representative plaintiff "will fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(4).  "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them."  *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Id*. (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

There is no apparent conflict of interest between the named Plaintiffs and their

counsel and the proposed Settlement Class. The interests of Plaintiffs and the Class Members appear to be aligned. The Court also has no reason to doubt that the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the Settlement Class. While the named Plaintiffs and their counsel previously disputed the handling of this class action, they have since demonstrated an ability to work together for the benefit of the Class Members. (*See* Clark Decl. at ¶¶ 22-25.) Additionally, Plaintiffs' counsel are qualified in wage and hour class action litigation, including having served as lead or co-counsel for plaintiffs in class actions in California state and federal court. (Jusuf Decl. at ¶ 3; Clark Decl. at ¶¶ 4-5.) Therefore, Plaintiffs and their counsel adequately represent the Class Members, satisfying Rule 23(a)(4)'s adequacy requirement.

### 5.  Predominance – Rule 23(b)(3)

"The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Hanlon*, 150 F.3d at 1022).

> Rule 23(b)(3)'s predominance and superiority requirements were added to cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Accordingly, a central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy.

*Id.* (internal quotation marks and citations omitted).

Here, as discussed above, common issues predominate over any individual issues—specifically, whether Defendant's practices and policies violate California labor laws. Given that the alleged improper conduct is not specific to a named Plaintiff or a particular employee, the Settlement Class is sufficiently cohesive in order to satisfy Rule 23(b)(3)'s predominance requirement.

///

6.     Superiority – Rule 23(b)(3)

"Plaintiffs must also demonstrate that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Otsuka*, 251 F.R.D. at 448 (citing Fed. R. Civ. P. 23(b)(3)).  "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and it is superior "if no realistic alternative exists."  *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234-35 (9th Cir. 1996).  The following factors are pertinent to this analysis:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The alternative to a class action would be to have the individual Class Members, which amount to approximately 13,413 individuals, file separate lawsuits. Requiring Class Members to pursue individual actions would potentially produce lawsuits numbering in the thousands.   That would be both impractical and inefficient.   Such individual litigation would consume judicial resources, impose additional burdens and expenses on the litigants, and present a risk of inconsistent rulings.  Therefore, Rule 23(b)(3)'s superiority requirement is also satisfied.

**B.     Preliminary Fairness Determination**

Having certified the class, the Court must next make a preliminary determination of whether the class-action settlement is "fundamentally fair, adequate, and reasonable" pursuant to Rule 23(e).  *Hanlon*, 150 F.3d at 1026.  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Id.*  A court may not "delete, modify or substitute

certain provisions" of the settlement; rather, "[t]he settlement must stand or fall in its entirety." *Id.* (citation omitted).

"[S]ettlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Id.* Consequently, a district court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Other relevant factors to this determination include, among others, "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026.

Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citations omitted).

Here, the Parties' Settlement complies with all of these requirements. The Court will address the relevant factors in further detail below.

1.   <u>Strength of Plaintiff's Case and Risk of Further Litigation</u>

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (internal quotation marks and citation omitted). As explained by the Supreme Court, "[n]aturally, the

agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

Upon review of the pleadings and history of this case and related litigation, it appears that any motion for class certification filed in this matter would be strongly contested and all further litigation contentious. Notably, there have been several class actions filed against Defendant in recent years. (Mot. at pp. 5-7.) While class certification was granted in *Portillo*, Defendant has successfully defeated three motions for class certification on many of the same issues. (*Id.*; Jusuf Decl. at ¶ 9; Clark Decl. at ¶ 7.)

Furthermore, the *Portillo* action has been heavily litigated since the beginning. (Jusuf Decl. at ¶ 8.) In addition to litigating and re-litigating a motion for class certification, Defendant filed multiple motions for judgment on the pleadings, one arguing that the claim for slip-resistant work shoes expense reimbursement is preempted by federal OSHA. (*Id.* at ¶¶ 9, 25; Clark Decl. at ¶ 18.) While the motion was ultimately denied by the Alameda County Superior Court, the motion was premised on a ruling by a district court judge in the Southern District of California in a different case finding that California Labor Code section 2802 claims for reimbursement of slip-resistant shoes are preempted by OSHA. (Jusuf Decl. at ¶ 25; Clark Decl. at ¶ 18.)

In addition, in *Portillo*, Defendant filed a cross-complaint against plaintiff Portillo alleging equitable indemnity for Defendant's damages and attorney's fees incurred in the action. (Jusuf Decl. at ¶ 15.) The parties in *Portillo* have also engaged in multiple private mediations, none of which led to settlement (*id.* at ¶¶ 11-

1  12), and engaged in extensive discovery, involving multiple motions to compel (*id.*
2  at ¶ 13).

3      Given the foregoing, not only does the litigation risk, expense, and complexity
4  for Plaintiffs appear to be high, but so does the likelihood of additional lengthy
5  litigation.  Accordingly, this factor favors approval.

6          2.    Amount of the Proposed Settlement

7      Here, the Gross Settlement Value amount represents approximately 19.70% of
8  the class damages for the underlying claims, which Plaintiffs have estimated as being
9  approximately $13,699,000.  (Jusuf Decl. at ¶ 45; Clark Decl. at ¶ 7.)  Though the
10 proposed settlement is a compromise amount and would be considerably less than
11 the total estimated damages, "[t]he fact that a proposed settlement may only amount
12 to a fraction of the potential recovery does not, in and of itself, mean that the
13 proposed settlement is grossly inadequate and should be disapproved."  *Linney v.*
14 *Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted); *see*
15 *also Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 250 (2001).

16     Plaintiffs argue that the compromised amount is an "excellent" result given the
17 past history of other class actions filed against Defendant over the past 8 years in that
18 Defendant has defeated three class certification motions on many of the same issues,
19 and given that the status of the law in the area of unreimbursed expenses, rounding
20 time, and meal and rest breaks is "somewhat unsettled."  (Mot. at pp. 19-21; Clark
21 Decl. at ¶ 7; Jusuf Decl. at ¶¶ 44, 50-51.)  Plaintiffs further argue that the proposed
22 Settlement "provides the additional benefits of a swift and certain payment of
23 overdue overtime pay to all members of the Class."  (Jusuf Decl. at ¶ 37.)  Therefore,
24 under the circumstances, the Court concludes that the amount offered in the
25 Settlement weighs in favor of approval.

26         3.    Extent of Discovery Completed and Stage of the Proceedings

27     "A settlement following sufficient discovery and genuine arms-length
28 negotiation is presumed fair."  *DIRECTV, Inc.*, 221 F.R.D. at 528.  While the Parties

only conducted informal discovery in the present case, the parties engaged in extensive discovery, involving multiple motions to compel, in *Portillo*. (Jusuf Decl. at ¶ 13; Clark Decl. at ¶ 40.)      The *Portillo* action, which commenced nearly three years before the filing of this action, has been heavily litigated with the parties engaging in extensive motion practice, as previously noted. (*Id*. at ¶¶ 7-19.)

In both the *Portillo* matter and the present case, the parties have also engaged in multiple mediations. In *Portillo*, the parties participated in private mediations in March and May 2012, as well as in August 2013, but did not reach a settlement. (Jusuf Decl. at ¶¶ 11-12, 21.) On August 22, 2014, the parties in the present case and *Portillo* participated in another full day private mediation. (*Id*. at ¶ 36.)

The Parties reached the current proposed "global" Settlement after continuing to engage in "numerous and extensive discussions" post-mediation. (*Id*. at ¶¶ 39-40.) Plaintiffs contend that the Settlement did not occur until they "possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation." (Clark Decl. at ¶ 40.)

Based on the foregoing, the Court concludes that this factor favors approval.

### 4.   Experience and Views of Counsel

The declarations Plaintiffs' counsel provided in support of the motion highlights Plaintiffs' counsel's experience in class actions, including being appointed as lead or co-lead class counsel in several certified class actions in state and federal courts. (Jusuf Decl. at ¶ 3; Clark Decl. at ¶¶ 4-5, Ex. 1.) Class counsel declares that in their opinion, "the settlement is fair, reasonable and adequate" and an "excellent" result. (Clark Decl. at ¶ 6; Jusuf Decl. at ¶¶ 44, 51.) Class counsel further declares that "under the circumstances, th[e] method of allocation is fair and equitable, taking into account the relative strengths of the different claims asserted in the Actions, accrued interest, and bears a reasonable correlation to the Settlement Class members' relative size of their claims." (Jusuf Decl. at ¶ 51.)

13cv533

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (citation omitted).   Accordingly, giving the appropriate weight to Plaintiffs' counsel's recommendation, the Court concludes that this factor also weighs in favor of approval.

## C.    Proposed Class Notice

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   Fed. R. Civ. P. 23(c)(2)(B).

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*   "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975) (citation omitted).

The Settlement provides that within 10 court days of the Court's order granting preliminary approval, Defendant must provide the Settlement Administrator an Excel file containing the following information: each Class Member's full name, last known address, last known phone number (if in the database), Social Security Number, the total amount deducted from his or her paychecks during the Class Period for buying slip-resistant work shoes, and his or her work years.  (Settlement at § IV(15).)  Defendant will also provide "any other information regarding the Class Members that the Settlement Administrator reasonably needs to administer the

Settlement." (*Id.*)

After receiving the information, the Settlement Administrator will perform a search and update any change of address using the National Change of Address Database. (*Id.*) Within 10 days of receiving the information from Defendant, the Settlement Administrator will mail the proposed notice of class settlement and a customized claim form in both English and Spanish, by first class mail, to each of the Class Members. (*Id.*) A business return envelope (or with pre-paid postage) will accompany each mailing. (*Id.*) For any returned mail, the Settlement Administrator will perform reasonable "skip tracing" and re-mail the Settlement Packets. (*Id.*) The Class Members will have 45 days from the original mailing to file a claim. (*Id.*)

Plaintiffs contend that the proposed notice procedure set forth in the Settlement "provides the best practicable notice to members of the Settlement Class, both in the manner of dissemination and in terms of content, and provides the most direct way of apprising Class members of the Settlement." (Mot at pp. 22-23.) They also contend that the "notice materials will allow Settlement Class members to make an informed judgment whether to remain in the Settlement Class and receive benefit under the Settlement, opt out of the Settlement, or object to the terms of the Settlement." (Mot. at p. 23.)

The proposed notice, attached as Exhibit A to the Settlement ("Notice"), complies with Rule 23(c)(2)(B) and provides information on the terms and provisions of the Settlement, the benefits that Settlement provides for Class Members, the date, time and place of the final settlement approval hearing, and the procedure and deadlines for opting out and objecting. (Clark Decl. at ¶ 39; Jusuf Decl. at Settlement, Ex. 1.) The Notice also lays out the scope of the release, and explains what will occur if a Class Member does nothing. (Notice at ¶¶ 5-6.) The proposed customized claim form, attached as Exhibit B to the Settlement ("Claim Form"), reiterates the release of claims, the deadline to submit the form, and each individual Class Member's proposed share of the Settlement.

Having reviewed the proposed Notice and Claim Form, the Court finds that the methods and contents comply with due process and Rule 23. However, the Court directs the Parties to make one modification: the "Your Right to Object to the Settlement" section of the Notice (§ 7) should be modified to eliminate the requirement that any objection must be filed electronically with the Court. Otherwise, the Court approves of the Notice and Claim Form.

## III. CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** Plaintiffs' motion for preliminary approval of the class action settlement. Accordingly, the Court hereby **ORDERS** the following:

1. The Court hereby conditionally certifies the following class for settlement purposes only: "All persons employed by Kellermeyer Bergensons Services, LLC (formerly known as Kellermeyer Building Services, LLC) as janitors/housekeepers in the State of California at any time from August 10, 2006 to October 27, 2014." The Settlement Class encompasses the *Portillo* Class, certified by the Alameda County Superior Court on March 26, 2013, including those individuals who previously opted out of the *Portillo* Class.

2. The Court hereby finds, for settlement purposes only, that the Class meets the requirements for certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3).

3. The Court hereby preliminarily finds that the Settlement was the product of serious, informed, non-collusive negotiations conducted at arms' length by the Parties. In making this preliminary finding, the Court considered the Gross Settlement Value, Class Counsel's assessment of potential class claims, the monetary benefit available to the Settlement Class members, the allocation of Net Settlement Value to the Settlement Class members, Defendant's potential liability, and the fact that a settlement represents a compromise of the Parties' respective positions rather than the result of a finding of liability at trial. The Court further preliminarily finds

that the terms of the Settlement have no obvious deficiencies and do not improperly grant preferential treatment to the named Plaintiffs, or any member of the Settlement Class.

4.     The Court hereby appoints named Plaintiffs, Agustin Arellano, Andres Lara, and Venancia Portillo, as Class Representatives.

5.     The Court hereby appoints Counsel for Portillo and Counsel for Arellano, as defined in the Settlement, as Class Counsel.

6.     The Court hereby approves the selection of CPT Group, Inc. to serve as the Settlement Administrator.

7.     The Court hereby approves the Notice of Class Action Settlement attached to the Settlement as Exhibit A <u>with the following modification: the "Your Right to Object to the Settlement" section (§ 7) should be modified to eliminate the requirement that any objection be filed *electronically* with the Court.</u>

8.     The Court hereby approves the Claim Form attached to the Settlement as Exhibit B.

9.     The Court finds that the Notice constitutes the best notice practicable under the circumstances and is in full compliance with federal and California law and, to the extent applicable, the United States Constitution and the requirements of due process.   The Court further finds that the Notice fully and accurately informs Settlement Class members of all material elements of the proposed Settlement, including each Class member's right and opportunity to object to the proposed Settlement.   The Court further finds that the Notice fully and accurately informs Settlement Class Members of each Class member's right to be excluded from the Settlement Class.

10.    The Court hereby orders that the Parties effectuate the terms of the Settlement, including dissemination of the Notice and Claim Form to the Settlement Class members in the manner provided in the Settlement.

///

11.     Any Settlement Class member who wishes to object to the Settlement shall submit the objection in writing and file it with the Court with copies mailed to Class Counsel and Counsel for Defendant no later than forty-five (45) calendar days after the date of the initial mailing of the Notice.

12.     Any member of the Settlement Class who wishes to opt out of the Settlement Class must mail or fax to the Settlement Administrator at the address set forth in the Notice, a signed request for exclusion from the Class, postmarked or faxed no later than forty-five (45) calendar days after the date of the initial mailing of the Notice.

13.     Members of the Settlement Class must mail or fax the signed Claim Form no later than forty-five (45) calendar days after the date of the initial mailing of the Notice.   Any Settlement Class member who does not timely opt out or submit a Claim Form will not receive payment under the Settlement, but will nonetheless be subject to the release set forth in the Settlement.

14.     Within 10 (ten) court days of the Court's order granting preliminary approval, Defendant shall provide the Settlement Administrator an Excel file containing the following information from its records: Each Settlement Class Member's full name, last known address, last known phone number, if contained in Defendant's payroll database, Social Security Number, the total amount deducted from his/her paychecks during the Class Period for buying slip-resistant work shoes, and his/her Work Year(s).  ("Settlement Class Members' Information").  Defendant will provide other information regarding the class members that the Settlement Administrator reasonably needs to administer the Settlement.

15.     The Settlement Administrator shall then administer the Settlement consistent with the Settlement and this Order.

///

///

///

– 21 –

16.     The Court hereby schedules a Final Approval Hearing to consider whether to grant final approval of the proposed class action settlement, the requests for Enhancement Awards, and the requests for attorneys' fees and reimbursement of costs and expenses to Class Counsel, for **April 13, 2015** at **10:30 a.m.** in **Courtroom 4B**.

17.     Named Plaintiffs' motion for final approval and supporting documents shall be filed pursuant to the Federal Rules of Civil Procedure and Local Rules.

**IT IS SO ORDERED.**

DATED:  December 5, 2014

Hon. Cynthia Bashant
United States District Judge